**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3139
_____

ZHENFENG WANG,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-936-257)
Immigration Judge:  Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 16, 2011

Before:  FUENTES, VANASKIE and NYGAARD, Circuit Judges

(Opinion filed: April 6, 2011)
_____

OPINION
_____

PER CURIAM

Petitioner seeks review of the decision of the Board of Immigration Appeals

("BIA"), dismissing his appeal from the Immigration Judge's ("IJ") denial of his

applications for relief.  For the reasons that follow, we will deny the petition for review.

Petitioner Zhenfeng Wang is a native and citizen of China. He arrived in the United States in November 2006 with a B-1 visa which he overstayed. On October 30, 2007, he was charged with removability pursuant to INA § 237(a)(1)(B). In response, he applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In support of his application, he filed an I-589, an amended I-589, a supplemental statement, and some background materials on the China Democracy Party ("CDP"). He claimed that he required protection from persecution based on his religion, China's family planning policies, and his membership in the CDP after he arrived in the United States.

After a hearing at which Wang and one supporting witness testified, the IJ held that Wang had not demonstrated either past persecution or a well-founded fear of future persecution on the basis of any of the grounds he alleged and that he was not a credible witness. The BIA found that the IJ's credibility determination was not clearly erroneous, agreed with the IJ's determination that Wang had not demonstrated a likelihood of future persecution or torture, and dismissed his appeal. Wang timely filed a petition for review.

We have jurisdiction over this petition for review pursuant to 8 U.S.C. § 1252. Where, as here, the BIA has substantially relied on the adverse credibility finding of the IJ, we review both of those determinations for substantial evidence. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Under this standard, we will uphold an adverse credibility finding unless "'any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. at 243 (quoting 8 U.S.C. § 1252(b)(4)(B)). However, we will defer to the BIA only if its determination finds support in the record. See Fei Mei Cheng v.

2

Attorney Gen., 623 F.3d 175, 182 (3d Cir. 2010) (citing Toure v. Attorney Gen., 443 F.3d 310, 316 (3d Cir. 2006)). We exercise de novo review over the legal determinations of the BIA. See Kaplun v. Attorney Gen., 602 F.3d 260, 265 (3d Cir. 2010).

Wang testified that he is married and has one daughter. In 1987, after the birth of their daughter, his wife was forced to have an IUD inserted. When his wife, Guimin Zhao, became pregnant again in November 1996, she was forced by the family planning officials to undergo an abortion and have another IUD inserted. While this was happening, petitioner was at work, and by the time he arrived at the hospital, the procedure had already been done. In March 2006, his wife hired a private doctor to remove the IUD. After she became pregnant, she went into hiding. In July 2006, four family planning officials found her and forced her to have another abortion and for another IUD to be inserted. Wang testified that upon his arrival at the hospital, he had a confrontation with the family planning officials in which "they hit me and put me down on the ground." When asked why he failed to mention this incident in his initial asylum application, he stated that it did not occur to him because he did not suffer any injuries during the incident. After that, Wang claimed that he was demoted, his bonus was taken away, and he was fined 5,000 RMB, which is the equivalent of over six months' salary. He was warned that if his wife removed the IUD, he would be sterilized. He also claimed to have lost two months' pay following the second abortion.

Wang also alleged that he would be persecuted upon his return to China based on his membership and participation in the CDP while in the United States. He testified that he received a pamphlet from the CDP on April 27, 2008, approximately one and a half

3

years after he arrived in the United States, and decided to join because "the principal [sic] of China Democracy Party was very similar to [his] own ideal." He joined the CDP on May 1, 2008, and since then, claimed that he had published three articles on its website and had joined six demonstrations in front of the Chinese consulate. He argued that based on this activity, if he had to return to China he would be arrested and incarcerated. While he testified that the police stopped by his house in China on June 15, 2008, and told his wife that he had joined the CDP, he also confirmed that nothing happened to his wife during this visit from the police. The record contains a letter from Wang's wife, dated June 23, 2008, which corroborates this account.

Xingju Ling, a member of the CDP, also testified on Wang's behalf. She stated that she had known Wang for four months, that she had attended some "activities" with him, and that she had seen three articles which he claimed to have written on the CDP website. She did not have any firsthand knowledge as to whether he actually authored these articles.

The IJ found Wang's testimony to be incredible and denied all requested relief. First, the IJ held that Wang presented no evidence regarding his religion or how he would be persecuted on that basis. With respect to his claim of persecution based on opposition to China's family planning policies, the IJ held that under Matter of J-S-, 24 I. & N. Dec. 520 (A.G. 2008), Wang could not claim refugee status based on the subjection of his wife to coercive family planning policies. See id. at 537; see also Lin-Zheng v. Attorney Gen., 557 F.3d 147, 157-58 (3d Cir. 2009) (en banc). Rather, he had to show that he engaged in some "other resistance" to China's population control policies or had a well-founded

4

fear that he would be sterilized or subjected to some other type of future persecution on account of his resistance to such policies. See Lin-Zheng, 24 557 F.3d at 157. The IJ held that Wang had not made such a showing and that the fines and demotion imposed on him, assuming they really occurred, did not rise to the level of past persecution, as Wang failed to demonstrate that they rendered him incapable of making a living or providing the necessities of life for himself and his family. The IJ held that even if Wang had been assaulted by family planning officials, this conduct did not rise to the level of persecution. As Wang himself admitted, he omitted this allegation from his asylum application because he was not seriously injured and did not believe it was significant.

Next, the IJ made an adverse credibility finding based on omissions from Wang's asylum application and certain discrepancies between his application and his testimony. Specifically, the IJ found that Wang's failure to include the alleged assault by family planning officials in his original asylum application "was either serious enough to put in the original application, or if not serious enough to put in the original application, should not be put in now." (J.A. 36.) The IJ found Wang's explanation for omitting this event from his original application but later supplementing his request for relief to be unconvincing. The IJ also found Wang's application lacking in terms of its omission of any information regarding his alleged demotion at work based on his opposition to China's family planning policies. The IJ explained that a demotion from a union chief to a clerk, which presumably came with a significant pay cut and would have been relevant to an assessment of whether Wang suffered past persecution, presented a significant credibility issue for the court. The IJ also compared the letter from Wang's wife with his

5

I-589 and found "striking similarities" in the language used in the two documents, which "reflect[ed] poorly on the respondent's credibility." (J.A. 38.)

Finally, regarding his activities in the CDP, the IJ expressed skepticism about whether Wang could argue that he would be persecuted based on activities he had engaged in voluntarily after arriving in the U.S., and held that Wang failed to demonstrate that the Chinese government was likely to persecute him in the future on that basis. While the BIA disagreed with the IJ's holding that Wang could not establish persecution based on activities undertaken in the U.S., it nonetheless held that, given his lack of credibility and minimal alleged involvement in the CDP, he failed to demonstrate a well-founded fear of future persecution on this basis. Based on the foregoing, the IJ denied relief, and the BIA affirmed and dismissed his appeal.

In his brief, Wang argues that the IJ's credibility determination was not supported by substantial evidence. We do have some concerns about the IJ's adverse credibility determination. While Wang did fail to mention his demotion in the text of his asylum application, he did address it in the accompanying narrative statement, explaining that he was "demoted from the section chief position due to the second violation of the family planning policy." (J.A. 146.) This statement was corroborated by his testimony. The IJ also criticized the similarities between Wang's narrative statement and the supporting letter from his wife. While these two documents do recite the same facts, we would expect them to, as they address the same circumstances.

Although we agree with Wang that the IJ's adverse credibility determination does not entirely find support in the record, we nonetheless find it unnecessary to remand, as

6

we agree with the BIA's alternative holding that Wang failed to demonstrate a likelihood of future persecution on account of any protected ground. The IJ held, and Wang does not contest, that he presented no evidence to support his contention that he had suffered or was likely to suffer persecution or torture on account of his religion. The IJ also held, assuming Wang's assertions regarding his opposition to China's family planning policy are true, that any repercussions he suffered did not rise to the level of persecution. We agree with these conclusions.

With respect to Wang's claim of political persecution on account of his activities with the CDP, we agree with the BIA that Wang's political activities in the United States could form the basis for an asylum claim. However, we also agree with the BIA that Wang failed to demonstrate a well-founded fear of future persecution based on "his minimal alleged involvement in this political organization." Wang takes issue with the classification of his activities as "minimal," arguing that he participated in six demonstrations and protests and posted three articles to the CDP's website, and maintains that neither the IJ nor the BIA considered the evidence in the record regarding China's stance toward active members of the China Democracy Party. However, the evidence cited does not support his position. The 2007 Department of State Report is careful to distinguish between those asylum applicants who were politically active in China, and those who became members of the U.S.-based Chinese Democratic Party or Chinese Alliance for Democracy. According to the Report, the Department of State "ha[s] no independent information about how people involved in these groups are treated if they return to China." (J.A. 235.) Thus, we disagree that, based on a review of the record

7

evidence, a reasonable factfinder would be compelled to reverse the IJ and BIA's decisions on this issue.

Based on the foregoing, we will deny the petition for review.